Robertson, J.,
(dissenting.) On a motion for a new trial by the defendants, this Court at Special Term determined not to grant one, if the plaintiff would consent to reduce the verdict by a certain sum. He did so: The refusal of a new trial was therefore a benefit obtained by the plaintiff, and an injury wrought to the defendants by his stipulation. It has been held, in many cases, that a benefit obtained by one party, in judicial proceedings, by admissions or stipulations made by him, precludes him from seeking to get rid of the effect of such admissions or stipulations. A party proceeding on an order, or accepting a benefit under it, is precluded from asking its review. (Radway v. Graham, 4 Abbotts’ Pr., 468.) A party alleging, in proceedings in partition, that others were co-tenants with him, is precluded, while such proceedings are pending, from bringing an action of trespass against them. (Van Norman v. Phelps, 9 Barb., 500.) A party availing himself of an execution against his person, to procure the benefit of *358 an imprisoned debtor act, is debarred from suing for false imprisonment under such execution, as irregularly issued. (Reynolds v. Church, 3 Cai., 274.) An affidavit of another, used by a party on a motion, may be used against him as evidence on another occasion. (Bruhle v. Hulse, 7 A. & E., 457.) Under the principle of these cases, an agreement to accept a certain verdict to deprive a party of a new trial, if the Court will refuse it, must bind the party who reduces his verdict in order to procure the favor. If he could immediately afterwards, by an appeal, render his consent of no avail, and thereby deprive the defendant of the benefit of the new trial, (when the Court has decided there were errors to entitle him to one,) or else of the costs of endeavoring to procure one, it would certainly work an injustice. Possibly the new trial might not benefit the defendant, but he is still entitled to what he worked for, and which must, therefore, on the question of estoppel, be considered beneficial to him, because he was deprived of it by the act of the Court and the consent of the plaintiff. The plaintiff’s appeal, therefore, should be dismissed, with costs.
In regard to the defendants’ appeal a great deal of embarrassment arises from the absence of evidence in the case of matters essential to show the nature of the contract made between the parties, their consequent obligations to each other, and their mutual relation. This is evidently not an action by a purchaser against a seller for not delivering what he had agreed to sell, nor is it an action for the conversion of choses in action belonging to the plaintiff; it is much nearer an action by a cestui que trust against a trustee, for breach of trust. This Court held, when this case was formerly before it at General Term, on a demurrer, (13 Abb., 467,) that the allegation in the complaint that the defendants “purchased ” the stock in question for the plaintiff, included an allegation of delivery, or at least admitted proof of it; also, that the allegation “sold,” included a parting with the possession of the stock so bought and delivered to the plaintiff for the defendants *359 and rendered thereby their property. This rendered the whole action simply one for conversion of the property belonging to the defendants. No such case was made on the trial. The only evidence on the trial, of a purchase, was an order to do so, the agreement of purchase by the defendants, and its ratification by the plaintiff; there was not a particle of evidence of the delivery of the stock, at all events until the sale by the defendants of the same number of shares. Nor was there anything to show any obligation by the defendants besides making the agreement to purchase the stock, to pay for it and hold it for sixty days, or until, within that time, the plaintiff was ready to take and pay for it. That would have compelled them, instead of merely becoming responsible to the vendor at the end of sixty days, in case the plaintiff did not pay, to have advanced the purchase-money, and waited for reimbursement until the plaintiff elected to take the stock. They were, however, only bound to' procure a responsible vendor, leaving the plaintiff to his remedy against him, when he should elect to take the stock. That being the contract, the plaintiff’s damage, if any, in this case, would arise only from the defendants anticipating him and procuring a delivery of the stock to themselves before he had made his election, thus debarring him of his remedy against the vendor. Of course, if they had procured the stock and not sold it, the jfiaintiff would have become entitled to it on ratifying the transfer as if it were his own election. The stock would become virtually his, held by them in trust for him, and they would be responsible for any unauthorized sale by them as any other trustee. (Hart v. Ten Eyck, 2 Johns. Ch., 62.) But in this case, besides there being no evidence of any delivery of stock to the defendants, there is also none of any notice by the plaintiff to them of considering the transfer to them as determining his election. The case rests entirely upon an agreement for a purchase of stock made by the defendants as the plaintiff’s agents, and their anticipation of his rights under the contract by procuring its transfer to themselves, *360 and getting rid of it without the consent of the plaintiff. The kind of injury is the same as if done by making the contract originally in such manner as to be invalid, so as to deprive the plaintiff of the benefit which he would have derived from it had it been valid. If the defendants actually took a delivery of the stock on the 19th of November, there was no evidence of any ratification of it by the plaintiff, so as to adopt it as his election, and in consequence no change in the market price was at his risk. Evidence of am offer to give him the stock the next day after the sale by the defendants, was excluded, and yet he claims the stock delivered to them to have been his without any adoption of the act. Under such a state of facts, the only action which could be maintained against the defendants would be to consider them as unfaithful agents, who, although they made the contract directed, with a responsible vendor, made it in such a form as to enable them to deprive the plaintiff of the right of enforcing it, and then deprived him of it' by first taking the stock to themselves and then putting it out of his reach. The damages to him, therefore, could only be such as would arise from the loss of the benefit of the contract if faithfully executed; this, however, required some intimation from him that he desired the stock. The vendors might have transferred to and received back from the defendants the same number of shares of the same stock repeatedly, without injuring the plaintiff, until he desired and demanded the stock, or notified the defendants or vendors of his election, or ratified a transfer to them, of none of which is there any evidence in this case.
The plaintiff might have disregarded the transfer, if any, to the defendants, and called upon them to procure and deliver the stock to him at any time during the sixty days or after, on paying.the purchase-money; and if they did not deliver or procure it, might have held them liable for any loss occasioned thereby, to the extent of the highest market rate. I have not been able to see any reason for any right of the plaintiff to recover the difference of the value of *361 •the stock on the 19th and on the 20th of November; because it does not appear by any demand, ratification, or notice of election, that he wanted the stock in the meantime, in other words, that he made his election to take it. On the contrary, the excluded evidence might have proved that it was offered to him as soon as he needed it.
In the absence of proof, therefore, of any delivery of the " stock to the defendants on the sale, so as to render them mere holders of it for the plaintiff’s benefit, subject to their lien for the purchase-money, and of proof of demand or notice, so as to determine the plaintiff’s election, I think the evidence of an offer to give the plaintiff the stock when he complained of the sale, at least, was material, even if proof of demand was unnecessary. But such demand or notice of an election to take the stock seems imperatively necessary to make it the plaintiff’s in any sense. If it did become his without such notice or demand, he would have had the advantage of owning the stock without making any election to take it, or paying, or tendering the purchase-money, and would have had' the benefit of a rise in the market without any risk, as he might have waited the whole sixty days to watch its fluctuations before he brought his action. Until the plaintiff needed his stock, and gave notice of it to the vendors or the defend-ants, no injury ensued to him by transferring or retransferring the same amount between them indefinitely, particularly if he actually refused it. Surely, by such a contract and such a sale by the defendants, the plaintiff cannot be relieved of all obligations to tender the purchase-money and demand the stock, leaving the defendants perpetually liable, without any responsibility on his part for all changes in the stock market as to the value of such stock.
I think, therefore, that the evidence of the defendants’ offer to replace the stock was improperly excluded, and if made before an election by the plaintiff to take the stock and pay the contract price, unless some specific injury to *362 the plaintiff is proved, he ought not to recover more than nominal damages at most.
The judgment should therefore be reversed, and a new trial awarded, with costs of the defendants’ appeal to abide the event.
Judgment affirmed.